In the Matter of CLARICE JACKSON, a Child under the Age of Sixteen Years.

Domestic Relations Court of City of New York, Children's Court Division, New York County, January 22, 1937.

No appearances by attorneys.

PANKEN, J. The Constitution of the State of New York (Art. 6, § 18) relating to the establishment of Children's Courts and Courts of Domestic Relations reads as follows: "The Legislature may establish Children's Courts, and Courts of Domestic Relations, as separate courts, or as parts of existing courts or courts hereafter to be created, and may confer upon them such jurisdiction as may be necessary for the correction, protection, guardianship and disposition of delinquent, neglected or dependent minors, and for the punishment and correction of adults responsible for or contributing to such delinquency, neglect or dependency, and to compel the support of a wife, child, or poor relative by persons legally chargeable therewith who abandon or neglect to support any of them. In con-

ferring such jurisdiction the Legislature shall provide that whenever a child is committed to an institution or is placed in the custody of any person by parole, placing out, adoption, or guardianship, it shall be so committed or placed, when practicable, to an institution governed by persons, or in the custody of a person, of the same religious persuasion as the child. In the exercise of such jurisdiction such courts may hear and determine such causes with or without a jury, except those involving a felony."

· The Domestic Relations Court of the City of New York was established by the State Legislature pursuant to and in conformity with the provisions of the New York State Constitution as hereinabove quoted. The Domestic Relations Court Act establishing the court became effective October 1, 1933. Theretofore, the Children's Court of the City of New York was a separate and distinct branch of the judicial system of the community. By the act of 1933 the Domestic Relations Court was given jurisdiction both over matters involving delinquent, neglected and dependent children as well as over family matters as defined in section 91 of the Domestic Relations Court Act.

In this proceeding I am concerned with the power of this court to commit out of the court a child, mentally defective, to a State institution established and maintained by the State of New York for the reception, custody and treatment of mentally defective children.

Subdivision 19 of section 2 of the Domestic Relations Court Act reads: " Physically handicapped child means a person under twenty-one years of age who, by reason of a physical defect or infirmity, whether congenital or acquired by accident, injury or disease, is or may be expected to be totally or partly incapacitated for education or for remunerative occupation, *but shall not include the deaf and blind.*"

The child involved in this proceeding is a girl, under the age of twenty-one, to wit, fifteen years of age. She is neither deaf nor blind and so is not in either of the groups excepted under this section.

The testimony submitted to me discloses the fact that this child is mentally defective and as such in need of the care and treatment and supervision which might be accorded her in an institution for mental defectives.

On February 4, 1936, the psychiatric clinic attached to the court reported that this child was a mental defective, a moron of low grade; that on a test given her she attained a mental age of eight years and eight months. On December 19, 1936, the same child was re-examined in the psychiatric division of Bellevue Hospital,

a hospital maintained by and for the city of New York. In the latter examination this child, older by some nine or ten months, attained an age of nine years and an intelligence quotient of fifty-seven and was classified as a moron. The psychiatric division of Bellevue Hospital, in its report to the court, expressed the opinion that this child was a proper subject for commitment to an institution for the mentally defective.

The matter came on to be heard before me on January 5, 1937. Dr. Nathaniel Ross, a duly admitted and practicing physician in the State of New York and a qualified psychiatrist under the laws of the State of New York, testified with great particularity as to the mental condition of this child. Dr. Ross has had a wide experience. He is associated with New York University and is a psychiatrist practicing on the wards in the psychiatric division of Bellevue Hospital in the city of New York. Dr. Helen Montague, chief of the psychiatric clinic of the Domestic Relations Court, who is a duly licensed physician and a qualified psychiatrist under the laws of the State of New York, also testified to the mental condition of the child herein. Dr. Montague has had very extensive experience in diagnosing psychiatrically for the court many thousands of cases. Both Dr. Ross and Dr. Montague are qualified to testify as experts as to mental status of persons examined by them. Both have testified that this child is a mental defective and in need of especial care as such and that such care can be had in a State institution maintained for that purpose.

Is it within the powers as conferred upon the Domestic Relations Court by the State Legislature to commit a child who is a mental defective to a State institution without first obtaining the written consent of either the parent or one standing *in loco parentis* to the child? Section 85 of the Domestic Relations Court Act, as amended by chapter 346 of the Laws of 1936, reads: " Mental and physical examinations; treatment. The court in its discretion, either before, during or after a hearing, may cause any child within its jurisdiction to be examined by a physician duly licensed as such by the State of New York or by a psychologist or psychiatrist, appointed or designated for the purpose by the court. If it shall appear to the court that any child within its jurisdiction is mentally defective, the court may cause such child to be examined and if such child shall be found to be mentally defective, the court may commit such child to a suitable institution."

The change that has been made by the amendment of 1936 is in the last phrase. In the section before it was amended that read: " The court may commit such child." In the amended version it reads as quoted: " The court may commit such child to a suitable institution."

The language of the section as originally drafted and passed, in my judgment, was explicit as to the power that it conferred upon the Children's Division of the Domestic Relations Court to commit a child if such child, within the jurisdiction of the court, was found by competent testimony to be mentally defective.

Often the language of a statute requires interpretation, and the purpose of a section, direction. That, under some circumstances, may require an inquiry as to the legislative intent, an inquiry as to what was in the mind of the legislators at the time the statute was drafted. What was the intention of the Legislature?

The portion of section 85 hereinabove quoted is specific and direct. It in simple language defines the power of the creature that the Legislature has created under the powers vested in the Legislature by the Constitution of the State of New York. If an inquiry into legislative intent were necessary, the section as amended in 1936 clearly and definitely indicates what powers the Legislature intended to and did confer upon the Children's Court of the Domestic Relations Court. The Legislature reiterated the power conferred upon the Domestic Relations Court and added thereto a direction that when a child is found to be mentally defective, it may be committed to a suitable institution. The Legislature, therefore, had the matter of what power is to be conferred upon the Domestic Relations Court, in relation to mentally defective children, before it twice and, on each occasion, it vested the court with jurisdiction of mentally defective children and power to commit a child within its jurisdiction as mentally defective to a suitable institution for its care, supervision and treatment.

There is no direct reference in the Constitution to physically handicapped or mentally defective children. The Constitution, however, refers to " neglected " or " dependent " minors. A child that is physically handicapped and its parents either refuse or are unable to provide proper medical care for it, undoubtedly, is a neglected child. It certainly is a dependent child.

A mentally defective child requiring especial and expert care and therapeutic treatment which often can only be accorded in a well-equipped institution, if the parents or those standing *in loco parentis* are unable to give or pay for such treatment, is a neglected and a dependent minor.

Mental defectives are very often dependents. Their dependency rests upon the degree of the mental defect. Some mental defectives suffer from constitutional inferiority, unfitting them for a place in the community and making them dependents. Unless these constitutional inferiorities are treated and the mental defects are

by special treatment reduced, they continue to be dependents. Experience has demonstrated that some constitutional inferiorities may be treated so as to make possible adaptability by the mental defective to life in the community.

The Constitution of the State of New York when it authorized the Legislature to confer power upon a court by it to be created to protect and guard delinquent, neglected or dependent minors, gave, in effect, power to the Legislature to enact law which will protect and guard all those that properly fall within these categories.

The child in question comes from a broken home. The present whereabouts of the father are unknown. The mother had been engaged in domestic service. In January, 1935, she was discharged because of the inability of her employer to continue to compensate her for her services. Since that time, the mother and this child have been on home relief, a direct charge on the public. In view of the economic situation as established, the mother is neither in a position to give the necessary care and supervision to this child at her home nor is she able to pay for institutionalization in a private sanatorium or special institution for mental defectives.

Section 161 of the Domestic Relations Court Act reads: " Effect of other laws. All laws and parts of laws, whether general, local or special, which are inconsistent with or in conflict with or repugnant to any provision of this act shall be deemed not to apply."

I hold that by section 161, when passed by the State Legislature and approved by the Governor of the State of New York, it was intended that all laws inconsistent with the powers conferred upon this court for the protection and the guarding of children should not apply. The effect of the adoption of the act was the repeal of statutes, sections and subdivisions inconsistent with the purposes of the Domestic Relations Court Act.

It is evident that the framers of the Constitution of the State of New York and the legislators acting thereunder intended that children shall be the especial wards of courts so that they might be guarded and protected. I conclude that this Domestic Relations Court has the power to commit, upon proper proof satisfactorily establishing mental defectiveness, to institutions maintained by the State for the care, treatment and supervision of mental defectives. While the Domestic Relations Court Act applies only to courts within the city of New York, the court itself is a creature of the State.